IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Michael Lewis Moore, #259895 ) | |
| ) | Civil Action No.8:08-2036-GRA-BHH |
| Petitioner, ) | |
| ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| ) | **OF MAGISTRATE JUDGE** |
| SCDC Director Jon Ozmint, ) | |
| and Warden of Lieber ) | |
| Correctional Institution, ) | |
| ) | |
| Respondent. ) | |
| _____ ) | |

The petitioner, a state prisoner, seeks relief pursuant to Title 28, United States Code,

Section 2254.  This matter is before the Court on the respondent's motion for summary

judgment.  (Dkt. # 20.)[1]

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and

Local Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review posttrial

petitions for relief and submit findings and recommendations to the District Court.

The petitioner brought this habeas action on May 27, 2008.[2]  On October 27, 2008,

the respondent moved for summary judgment.  By order filed October 28, 2008, pursuant

to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the petitioner was advised of the

summary judgment dismissal procedure and the possible consequences if he failed to

---

[1]A prisoner's custodian is the only proper respondent in a habeas corpus action. *See Rumsfeld v. Padilla*, 542 U.S. 426, 434-35 (2004). Therefore, as the warden is the only proper party in a habeas action, respondent SCDC Director Jon Ozmint should be dismissed from this action.  Accordingly, the undersigned will refer to the Warden as the only respondent throughout this report.  Further, the undersigned notes that the petitioner has been transferred to Perry Correctional Institution (dkt. #24) and thus the Warden of that institution should be substituted as the respondent.

[2]This filing date reflects that the envelope containing the petition was date stamped as having been received on May 27, 2008, at the Lieber Correctional Institution mailroom. (Pet. Attach.)  *Houston v. Lack*, 487 U.S. 266 (1988)(holding prisoner's pleading is considered filed when filed with prison authorities for forwarding to the district court).

adequately respond to the motion.  On January 5, 2009, the petitioner filed a response opposing the respondent's summary judgment motion.

## PROCEDURAL HISTORY

The petitioner is currently incarcerated in Perry Correctional Institution. In April 1998, the petitioner was indicted for homicide by child abuse. (App. 573-574.)     Randall Chambers, Esq., represented the petitioner on the charge.  A jury trial was held July 19-21, 1999, with the Honorable C. Victor Pyle presiding.  The petitioner was convicted as charged and Judge Pyle sentenced him to thirty years.  (App. 415.)  The petitioner appealed.

Harry L. Devoe, Jr., represented the petitioner on appeal and filed a brief on July 11, 2001, in the South Carolina Court of Appeals, raising the following issues:

> I. Did the trial judge err in failing to grant appellant's motion for a directed verdict based upon the State's failure to present evidence of an essential element of the crime charged?

> II. Did the trial court err in instructing the jury that appellant counsel be found guilty based upon accomplice liability, the hand of one, the hand of all?

(App. 419.)    On March 21, 2002, the South Carolina Court of Appeals affirmed the petitioner's conviction in an unpublished opinion, *State v. Moore*, 2002-UP-230 (S.C. Ct. App. 2002). (App. 446-452.) On April 3, 2002, the petitioner petitioned for rehearing, which the court denied on May 15, 2002. On June 17, 2002, the petitioner petitioned the Supreme Court of South Carolina for certiorari review.  On October 23, 2002, the Supreme Court of South Carolina denied the petition. The remittitur was sent down on October 28, 2002.

On November 13, 2003, the petitioner filed an application for post-conviction relief ("PCR"), raising claims of ineffective assistance on the following grounds:

> 1) Advised and convinced Applicant and his family not to testify;

> 2) Failed to have surprise evidence (letters) excluded and/or be verified. . .

> 3) Failed to properly object to Aiding and Abetting charge;

2

4) Failed to properly object to Burden of Proof charge.

(App. 455.)  On March 30, 2004, the State moved to dismiss the application for failure to file within the one-year limitations period for filing state PCR actions. On February 17, 2005, a hearing was held before the Honorable John C. Few.  The PCR judge denied the motion to dismiss finding the action was timely filed.  (App. 470-472.)  The PCR judge then held an evidentiary hearing on the allegations.  On August 14, 2006, the PCR judge issued an order denying relief and dismissing the action with prejudice. (App. 561-568.) The petitioner appealed the denial of relief.  Appellate Defender Robert M. Pachak represented the petitioner on appeal and on December 27, 2007, filed a *Johnson*[3] Petition for Writ of Certiorari in the Supreme Court of South Carolina raising the following issue: "Whether defense counsel was ineffective in failing to pursue an alibi defense?" (*Johnson* Cert. Pet. 2.)

On December 19, 2007, the Supreme Court of South Carolina transferred the case to the South Carolina Court of Appeals. On May 8, 2008, the South Carolina Court of Appeals denied the petition, and, on May 27, 2008, the remittitur was sent down.

In this petition for habeas, the petitioner raises the following grounds for relief, quoted verbatim:

> **Ground One:** The trial court erred in failing to grant Petitioner's motion for a directed verdict.
> **Supporting Facts:** The trial court erred in failing to grant Petitioner's motion for a directed verdict where the State failed to present any direct evidence or any substantial circumstantial evidence which would reasonable tend to establish that Petitioner was responsible for the victim's care and/or the lack thereof under the language and meaning of S.C. Code Ann. § 20-7-490.
>
> **Ground Two:** The trial court erred in instruction the jury that Petitioner could be found guilty based upon accomplice liability.
> **Supporting Facts:** The trial court erred in instructing the jury that Petitioner could be found guilty based upon accomplice

[3]*Johnson v. State,* 310 S.E.2d 201 (S.C. 1988).

3

liability, the hand of one, the hand of all, under S.C. Code Ann. § 16-3-86(A)(1).

**Ground Three:** Ineffective assistance of trial counsel.
**Supporting Facts:** Trial counsel was ineffective and Petitioner was prejudiced and denied his right to a fair trial in the following particulars:

I) Through counsel's failure to do a reasonable investigation into the facts of Petitioner's case;

ii) Through counsel's failure to preserve the issue of of Petitioner's motion for a directed verdict;

iii) Through counsel's failure to pursue an alibi defense;

iv) Through counsel's failure to properly object to the improper jury charge on homicide by child abuse under the second subsection of the statute. This improper jury charge shifted the burden of proof from the State to Petitioner in that Petitioner was never given proper notice that the State was attempting to prove two theories of the case where Petitioner was only placed on notice of an alleged violation of S.C. Code Ann. § 16-3-85(A)(1).

(Pet. 6-9; 17.)

## APPLICABLE LAW

**Summary Judgment Standard**

Rule 56 of the Federal Rule of Civil Procedure states as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

4

242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the petitioner's position is insufficient to withstand the summary judgment motion. *Anderson,* 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985).

HABEAS STANDARD OF REVIEW

Since the petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320 (1997); *Breard v. Pruett*, 134 F.3d 615 (4th Cir.1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication:

> 1. resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States; or
>
> 2. resulted in a decision that was based on an unreasonable application of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d)(1)(2).

5

Federal habeas corpus relief may not be granted unless the relevant state-court adjudication "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings," 28 U.S.C.A. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 398 (2000). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 410.

**EXHAUSTION AND PROCEDURAL BAR**

Exhaustion and procedural bypass are separate theories which operate in a similar manner to require a habeas petitioner to first submit his claims for relief to the state courts. The two theories rely on the same rationale. The general rule is that a petitioner must present his claim to the highest state court with authority to decide the issue before the federal court will consider the claim.

A. Exhaustion

The theory of exhaustion is based on the statute giving the federal court jurisdiction of habeas petitions. Applications for writs of habeas corpus are governed by 28 U.S.C. § 2254 , which allows relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States." The statute states in part:

> (b) (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that
>
> > (A) the applicant has exhausted the remedies available in the courts of the State; or
> >
> > (B) (I) there is either an absence of available State corrective process; or

6

(ii) circumstances exist that render such process, ineffective to protect the rights of the applicant.

(2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

(3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

This statute clearly requires that an applicant pursue any and all opportunities in the state courts before seeking relief in the federal court. When subsections (b) and (c) are read in conjunction, it is clear that § 2254 requires a petitioner to present any claim he has to the state courts before he can proceed on the claim in this court.  The United States Supreme Court has consistently enforced the exhaustion requirement.

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction. The first avenue is through a direct appeal and, pursuant to state law, he is required to state all his grounds in that appeal.  SCAR 207; *Blakeley v. Rabon*, 221 S.E.2d 767 (S.C. 1976). The second avenue of relief is by filing an application for PCR. S.C. Code Ann. § 17-27-10 et seq.  A PCR applicant is also required to state all of his grounds for relief in his application. S.C. Code Ann. § 17-27-90.  Strict time deadlines govern direct appeal and the filing of a PCR in the South Carolina Courts.  A PCR must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45.

When the petition for habeas relief is filed in the federal court, a petitioner may present only those issues which were presented to the South Carolina Supreme Court

7

through direct appeal or through an appeal from the denial of the PCR application, whether or not the Supreme Court actually reached the merits of the claim. If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts. *Patterson v. Leeke*, 556 F.2d 1168 (4th Cir. 1977); *Richardson v. Turner*, 716 F.2d 1059 (4th Cir. 1983).

B. Procedural bypass

Procedural bypass is the doctrine applied when the person seeking relief failed to raise the claim at the appropriate time in state court and has no further means of bringing that issue before the state courts. If this occurs, the person is procedurally barred from raising the issue in his federal habeas petition. The United States Supreme Court has clearly stated that the procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts, *Smith v. Murray*, 477 U.S. 527, 533 (1986).  Bypass can occur at any level of the state proceedings, if a state has procedural rules which bar its courts from considering claims not raised in a timely fashion. The two routes of appeal in South Carolina are described above, (i.e., direct appeal, appeal from PCR denial) and the South Carolina Supreme Court will refuse to consider claims raised in a second appeal which could have been raised at an earlier time. Further, if a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court.

If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. State procedural rules promote . . . not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case. *Reed v. Ross*, 468 U.S. 1, 10-11 (1984).

Stated simply, if a federal habeas petitioner can show (1) cause for his failure to raise the claim in the state courts, and (2) actual prejudice resulting from the failure, a procedural bar can be ignored and the federal court may consider the claim. Where a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and prejudice, the federal courts generally decline to hear the claim. *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

C. Inter-relation of Exhaustion and Procedural Bypass

As a practical matter, if a petitioner before this court has failed to raise a claim in state court, and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court. A federal court is barred from considering the filed claim (absent a showing of cause and actual prejudice). In such an instance, the exhaustion requirement is technically met and the rules of procedural bar apply. *Matthews v. Evatt*, 105 F.3d 907 (4th Cir. 1997)(citing *Coleman v. Thompson*, 501 U.S. 722, 735 n. 1 (1991); *Teague v. Lane*, 489 U.S. 288,297-98 (1989); and *George v. Angelone*, 100 F.3d 353,363 (4th Cir. 1996).

D. Cause and Actual Prejudice

The requirement of exhaustion is not jurisdictional and this court may consider claims which have not been presented to the South Carolina Supreme Court in limited circumstances. *Granberry v. Greer*, 481 U.S. 129, 131 (1987). In order to have such claims considered, a petitioner must show sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or that a "fundamental miscarriage of justice" has occurred. *Murray*, 477 U.S. 478. A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor which hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim. *Id.*

9

Absent a showing of "cause," the court is not required to consider "actual prejudice." *Turner v. Jabe*, 58 F.3d 924 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice in order to excuse a default. *Murray*, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error. He is required to prove that specific errors infected the trial and were of constitutional dimensions. *United States v. Frady*, 456 U.S. 152 (1982).

## DISCUSSION

**Ground One**

In Ground One, the petitioner alleges the trial court erred in failing to grant him a directed verdict on the ground that the State failed to present any direct or substantial circumstantial evidence tending to establish that he was responsible for the victim's care as required by the applicable statutes.

Prior to 2000, S.C. Code Ann. § 16-3-85 stated that a person was guilty of homicide by child abuse when he causes the death of a child under the age of eleven while committing child abuse or neglect as defined in § 20-7-490 and the death occurs under circumstances manifesting an extreme indifference to human life. Section 20-7-490 defined an "abused or neglected child" to mean "a child whose death results from or whose physical or mental health or welfare is harmed or threatened with harm . . . by the acts or omissions of the child's parent, guardian, or *other person responsible for his welfare*." (emphasis added.)[4]    Further, that section defined "a person responsible for a child's welfare" to include:

---

[4]This section was amended in 2000 by the deletion of the reference to the definitions of abuse and neglect contained in § 20-7-490, and the addition of subsection (B):

(1) "child abuse or neglect" means an act or omission by any person which causes harm to the child's physical health or welfare;
(2) "harm" to a child's health or welfare occurs when a person:
(a) inflicts or allows to be inflicted upon the child physical injury, including injuries  sustained as a result of excessive corporal punishment;
(b) fails to supply the child with adequate food, clothing, shelter, or health care, and the failure to do so causes a physical injury or condition resulting in death; or
(c) abandons the child resulting in the child's death.

the child's parent, guardian, foster parent, an operator, employee, or caregiver . . .  of a public or private residential home, institution, agency, or child day care facility or an adult who has assumed the role or responsibility of a parent or a guardian for the child, but who does not necessarily have legal custody of the child.  A person whose only role is a caregiver and whose contact is only incidental with a child, such as a babysitter or a person who has only incidental contact but may not be a caretaker, has not assumed the role or responsibility of a parent or guardian.

Although the petitioner does not expressly state  how this issue involves federal law, a "challenge to the sufficiency of the evidence to convict in a state prosecution is necessarily a due process challenge to the conviction." *Pope v. Netherland,* 113 F.3d 1364, 1368 (4th Cir. 1997).  Further, when reviewing claims of insufficient evidence, a federal court's review of such claims is "sharply limited." *Wilson v. Greene*, 155 F.3d 396, 405 (4th Cir. 1998)(internal quotations omitted).  A defendant is entitled to relief only if no rational trier of fact could have found proof of guilt beyond a reasonable doubt.  *Id*.

The petitioner was charged with homicide by child abuse for the death of one his girlfriend's children. The petitioner argues that there was no direct evidence or substantial circumstantial evidence of his guilt. (Pet. 6.)  Specifically he argues that, under the law in effect at the time of his trial, to convict a person of homicide by child abuse, the State had to prove  that the defendant  "was a person responsible for the care and well being of the victim."  The petitioner contends the evidence showed that he had not assumed the role of either parent or guardian. He alleges he was merely a recent live-in boyfriend who occasionally babysat his girlfriend's children.  (App. 420; 422.)

The South Carolina Court of Appeals found the following evidence was sufficient to support guilt under § 16-3-85.  (App. 451-452.)   The petitioner's girlfriend, Rochelle Maddox, testified that she and the petitioner had "set up a household, " and the petitioner took care of her children while she was at work.  The week after they began living together, the petitioner quit work and became a "stay-at-home mom" for her children.  She testified that the petitioner assisted in cooking and cleaning the apartment, as well as in toilet training the victim.  Steve Watkins from the Department of Social Services visited the apartment after another of Maddox's children had been admitted to the hospital.  He

testified that he thought the petitioner was a caregiver because the petitioner had brought the other child to the hospital and was aware of her general well-being and care and the petitioner kept Maddox's children while she worked. Department of Social Services Investigator Ron Harkins, who was investigating the other child's injuries, stated that as far as he knew, the petitioner was the children's caretaker. Walter E. Wood, a protective services worker testified that his impression from the outset was that the petitioner was an integral part of the family. Greenville City Police Department Detective Scott Willis testified that during his investigation of the case, that the petitioner when confronted with the fact that he was not the children's father, said he was the only father they had ever known.

The petitioner argues that Maddox, as a co-perpetrator, was not a competent witness and her testimony should be excluded from the record. (Pet't'r's Mem. Opp. Summ. J. Mot. at 4.) However, the fact that Maddox was a co-perpetrator charged with the same crime does not provide a basis for excluding her testimony. Rather, that fact merely goes to the weight of her testimony.[5]

The South Carolina Court of Appeals concluded that the petitioner "had 'the physical power of custody and control' to the extent that a jury could find [t]he evidence without question supported a finding that he was guilty" of homicide by child abuse. (App. 451-452.) The undersigned agrees that there is ample evidence on which a rational juror could find guilt beyond a reasonable doubt. Accordingly, the state court's decision was not contrary, nor an unreasonable application of, clearly established federal law. Further, it was not based upon an unreasonable determination of facts in light of the state court record. Accordingly, this ground is without merit and should be dismissed.

**Ground Two**

In Ground Two, the petitioner alleges the trial court erred by instructing the jury on accomplice liability. This issue was raised by the petitioner in his direct appeal and although not discussed in any depth, at the end of its opinion, the South Carolina Court of

---

[5]The undersigned notes that Maddox was extensively cross-examined about her involvement in her child's death and her motive for testifying against the petitioner. (App. 107-129.)

Appeals stated that the evidence in this case "without question supported a finding that [the petitioner] was guilty as a principal under section 16-3-85(A)(1)." (App. 452.)   The court included a footnote citing to *State v. Strange*, 417 S.E.2d 609 (S.C. Ct. App. 1992), for the proposition that even if a disputed  instruction was improper, the error was harmless if there was overwhelming evidence of guilt apart from the evidence to which the questioned charge related.  (App. 452.)

A federal court "exercises a limited role" when collaterally reviewing a state trial court's jury instructions, *Smith v. Bordenkircher*, 718 F.2d 1273, 1276 (4th Cir. 1983) , and "the inquiry is narrow."  *Murphy v. Holland*, 776 F.2d 470, 476 (4th Cir. 1985).  Because ordinarily "instructions to the jury in state trials are matters of state law and procedure not involving federal constitutional issues,"  *Grundler v. North Carolina*, 283 F.2d 78-98, 802 (4th Cir. 1960), claims involving jury instructions are not cognizable on federal habeas review, unless the giving of the instruction violated a right guaranteed by the Fourteenth Amendment.  *See Cupp v. Naughten,* 414 U.S. 141, 146-47 (1973).

To be guilty under an accomplice liability theory, "a person must personally commit the crime or be present at the scene of the crime and intentionally, or through a common design, aid, abet, or assist in the commission of that crime through some overt act."  *See State v. Langley*, 515 S.E.2d 98, 101 (S.C.1999).  As in Ground One, the petitioner appears to allege that inadmissible evidence supported the instruction and thus the instruction should not have been given.  However, as noted above, the testimony of Maddox was not inadmissible.  The giving of the accomplice instruction did not violate any federal rights or laws.  Thus, the South Carolina Court of Appeals' decision was not contrary to, nor an unreasonable application of, federal law.  Accordingly, this claim is without merit and should be dismissed.

**Ground Three**

In Ground Three, the petitioner raises four claims of ineffective assistance of counsel.  In *Strickland v. Washington,* 466 U.S. 668 (1984), the United State Supreme Court established a two-part test for determining whether a convicted person is entitled to

relief on the ground that his counsel rendered ineffective assistance. The first prong of the test requires that petitioner demonstrate that counsel's performance was deficient and "fell below an objective standard of reasonableness." *Id.* at 688. The second prong requires the petitioner to show that the deficient performance prejudiced the defense. *Id.* at 687. In order to satisfy the prejudice requirement of the two-prong test set forth in *Strickland,* defendant must show that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Lockhart v. Fretwell,* 506 U.S. 364 (1993). "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " *Strickland,* 466 U.S. at 689.

1) Counsel's failure to reasonably investigate

The petitioner alleges trial counsel should have made a reasonable investigation. However, he does not make any specific arguments as to what trial counsel may have discovered and what effect that may have had on his trial.  As noted above, in order to prove ineffective assistance of counsel, a petitioner must establish, first, that his attorney's performance fell below a reasonable standard for defense attorneys and, second, that he was prejudiced by this performance. *Strickland,* 466 U.S. 668 (1984).  The petitioner is not entitled to a hearing based upon unsupported, conclusory allegations. *Nickerson v. Lee*, 971 F.2d 1125, 1136 (4th Cir. 1992) (in order to obtain an evidentiary hearing a habeas petitioner must come forward with some evidence that the claim might have merit). A petitioner bears the burden of affirmatively showing deficient performance. *Spencer v. Murray*, 18 F.3d 229, 233 (4th Cir. 1994).  The presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977). As this claim is unsupported by any factual allegations and conclusory, it should be dismissed.

2) Failure to preserve issue of motion for a directed verdict

The petitioner alleges trial counsel was ineffective for failing to preserve the issue regarding the denial of his directed verdict motion.  The petitioner did not raise this issue in his PCR action and thus this issue is procedurally barred from habeas review.  *Matthews, supra*.

When a state prisoner has defaulted a claim in state court, habeas review of the claim is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.  *Coleman*, 501 U.S. at 750.  The petitioner has not argued any other ground to excuse the default and none is readily apparent on this record.  Thus, these claims are  barred from habeas review.

In *Kornahrens v. Evatt*, 66 F.3d 1350 (4th Cir. 1995), the Court of Appeals stated that once a claim is determined to be procedurally barred, the court should not consider the issue on its merits. The Court noted that it is always tempting to discuss the merits as an alternative reason for a conclusion, but that once a court finds an issue to be procedurally barred, all discussion which follows is only dicta.  *See Karsten v. Kaiser Foundation Health Plan*, 36 F.3d 8, 11 (4th Cir. 1993).  Therefore, once a court has determined that a claim is procedurally barred, it should not stray into other considerations.

3) Failure to present alibi defense

The petitioner alleges trial counsel failed to present an alibi defense. At this PCR hearing, the petitioner's purported former employer testified that the petitioner was out of state at the relevant time, the week of January 11, 1998.  However, Maddox's testimony was in direct conflict with this testimony and a DSS employee also testified at trial that he interviewed the petitioner in the girlfriend's home that same week.  (App. 564, n. 2.) Additionally, at the PCR hearing, several of the petitioner's family members testified that the petitioner lived with his parents.  The PCR judge held that the petitioner failed to prove any prejudice.  Specifically, he found "there is a low probability these witnesses' testimony would have affected the outcome of the trial." The PCR judge "agre[ed] with both the trial

judge and the South Carolina Court of Appeals that the evidence against the [petitioner] was overwhelming." (App. 567.) As set forth in the discussion of Ground One, there was overwhelming evidence that the petitioner was living with Maddox when her child died. Further, as the PCR judge found, trial counsel made a strategic decision not to put up a defense. (App. 555.) *See Strickland,* 466 U.S. 689 (holding reasonable trial strategy is not basis for ineffective assistance claim); Sexton v. French, 163 F.3d 874, 887 (4th Cir. 1998) (holding tactical decision can not be second-guessed by court reviewing collateral attack). The petitioner has failed to show that trial counsel's strategic decision not to present this evidence was unreasonable or that the testimony of these witnesses would have made any difference in the outcome of the trial. The PCR judge's decision was not contrary to, nor an unreasonable application of, federal law. Accordingly, this claim is without merit and should be dismissed.

   4) Failure to object to improper jury instruction

   The petitioner alleges that trial counsel failed to properly object to the improper jury charge on homicide by child abuse under the second subsection of the statute. He contends that the jury charge shifted the burden of proof from the State to the petitioner in that he was never given proper notice that the State was attempting to prove two theories of the case where the petitioner was only placed on notice of an alleged violation of S.C. Code Ann. § 16-3-85(A)(1). The petitioner raised this issue in his PCR action and the PCR judge noted that trial counsel had objected that a jury charge on the second subsection of the statute was improper when the petitioner was indicted under the first subsection. (App. 355-356; 566.)  Here, the trial record confirms trial counsel did object to this charge. (App. 355-356.) Thus, trial counsel was not deficient.  Accordingly, the PCR judge's decision was not contrary to, nor an unreasonable application of, federal law and this claim should be dismissed

## **CONCLUSION**

   Wherefore, it is RECOMMENDED that the Respondent's Motion for Summary Judgment (Dkt. # 20) be GRANTED; and the habeas petition DISMISSED with prejudice.

IT IS SO RECOMMENDED.


BRUCE H. HENDRICKS
UNITED STATES MAGISTRATE JUDGE

April 30, 2009
Greenville, South Carolina


**The petitioner's attention is directed to the important notice on the next page.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
P.O. Box 10768
Greenville, South Carolina 29603

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).